# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA
## (MIAMI DIVISION)

Case No.: 1:15-CV-22578-KMM
Bankruptcy Court Case No.: USBC-MIA-17004-BKC-RAM

SCOTT HARRY DEUTSCH,

    Appellant,

vs.

GREGORY L. DENES, P.A.

    Appellee.

_____/

## APPELLEE'S BRIEF

Appeal from a Final Order of Judge Mark,
U.S. Bankruptcy Court, Southern District of Florida

**SHUTTS & BOWEN LLP**
1500 Miami Center
201 South Biscayne Blvd.
Miami, FL  33131
Phone:  305-358-6300
Facsimile:  305-347-7802
*Attorneys for Gregory L. Denes, P.A.*

/s/ *Robert Fracasso*
Robert Fracasso, Esq.
Florida Bar No. 959928
rfracasso@shutts.com

## CORPORATE DISCLOSURE STATEMENT

Gregory L. Denes, P.A. is a Florida Professional Association. It has no parent company and no public company owns 10% or more of its stock. It is wholly owned by Gregory L. Denes.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................4

JURISDICTIONAL STATEMENT........................................................................5

STATEMENT OF THE ISSUES.............................................................................5

PREFACE.................................................................................................................5

STATEMENT OF THE CASE AND FACTS.........................................................6

SUMMARY OF THE ARGUMENT.....................................................................11

ARGUMENT....................................................................................................11-16

    I.    JUDGE MARK DID NOT COMMIT REVERSIBLE ERROR BY FINDING THAT DENES' CHARGING LIEN ON UNFUNDED RECOVERIES SURVIVED BANKRUPTCY.11

    II.   APPELLANT HAS NOT CHALLENGED THE COURT'S RULING THAT APPELLANT HAS NO OWNERSHIP OR INTEREST IN DENES' FEE....................................................15

CONCLUSION.......................................................................................................16

CERTIFICATE OF COMPLIANCE......................................................................17

CERTIFICATE OF SERVICE................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Grant v. Kaufman*, P.A. (*In re Hagen*) 922 F.2d 742 (11th Cir. 1991)................14,15

*HSSM #7 Limited Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 886 (11th Cir. 1996).......................................................................................................5

*Litman v. Fine, Jacobson, Schwartz, Nash, Block and England, P.A.,* 517 So.2d 88 (Fla. 3rd DCA 1987)........................................................................13,14

*Sinclair, Louis et al. v. Baucom*, 428 So.2d 1383 (Fla. 1983)................................13

*Weed v. Washington (In re Washington),* 242 F.3d 1320 (11th Cir. 2001)......12,13

## JURISDICTIONAL STATEMENT

Appellee Gregory L. Denes P.A. ("Denes") does not dispute Appellant's jurisdictional statement.

## STATEMENT OF THE ISSUES

The issue on appeal is whether, based upon his factual findings, Bankruptcy Judge Robert A. Mark correctly ruled that Denes' charging lien and property interest in contingent attorneys' fees which would not be funded prior to or during the bankruptcy proceedings survived Appellant's bankruptcy.

Denes does not dispute the standard of review with respect to factual findings. *De novo* review is limited to determinations of law. *HSSM #7 Limited Partnership v. Bilzerian (In re Bilzerian)*, 100 F.3d 886 (11th Cir. 1996).

## PREFACE

References to the Record on Appeal and Transcripts are abbreviated as follows:

(DE__:__) = Docket Entry and internal page number from Bankruptcy Case No. USBC-MIA-17004-BKC-RAM.

(TR__) = Transcript of May 21, 2015 hearing before Honorable Robert A. Mark and page number.

## STATEMENT OF THE CASE AND FACTS

This case involves an attempt by Appellant, who has now been through three attorneys in his bankruptcy case alone, to avoid payment of Denes' attorneys' fees for work that was, and continues to be, performed pursuant to a contingency fee contract. Appellant neither disputes Judge Mark's factual findings nor asserts that Judge Mark committed clear error with respect to any of those findings. Accordingly, Denes hereby incorporates Judge Mark's factual findings.

Appellant's purported factual recitations, however, require some clarification and correction. Gregory Denes, a former law clerk to the Honorable Peter Fay in the United States Eleventh Circuit Court of Appeals, has been practicing in the area of disability insurance law for approximately twenty-five (25) years. (DE 235:1.) Upon referral from a colleague, Mr. Denes first became involved with Appellant in 2011, after Appellant had discharged his prior lawyer. (DE 235:1.) At that time, Appellant was in the midst of litigation with his disability insurance company concerning benefits that were allegedly due him. (DE 235:1.)

After reviewing the file and medical records, Denes entered into a standard disability insurance contingency fee agreement ("Fee Agreement") with Appellant, whereby Appellant agreed to compensate Denes at a rate of one third of the benefits recovered on behalf of Appellant. (DE 235:1; DE 233-1:1.) Because payments are

not made in a lump sum, but instead are made monthly, under the Fee Agreement Appellant specifically agreed to (and directed) payment of the future benefits from the insurance company into Denes' trust account, with Denes to disburse two-thirds (2/3) of the benefits each month to Appellant. (DE 233-1:1.)

Denes eventually won Appellant's case. (DE 233:3.) The insurance company agreed to put Appellant on claim, such that Appellant would be evaluated monthly for continuing disability benefits. *Id*. As a result, the insurance company began to make payments directly to Denes pursuant to the Fee Agreement. (DE 233:3.) Denes continued to submit claim forms, communicate with the insurance company and set up appointments when necessary to ensure that Appellant continued to receive benefits. (DE 235:2.) Over the next three-plus years, the disability funds were paid into Denes' account and Denes religiously distributed to Appellant his portion of the funds each month. Appellant never objected to or challenged Denes' entitlement to the fees, and gladly accepted Denes' work in ensuring that benefits continued to be paid. (DE 233:6; DE 235:3.)

Separately, after securing a victory for Appellant against the disability insurance company, Appellant informed Denes of another lawsuit, this one alleging that Appellant had misappropriated millions of dollars from an investor in Appellant's clothing company. (DE 235:2.) By the time that Denes was informed of this lawsuit, it already had resulted in a multimillion-dollar judgment against

7

Appellant. *Id*. Writs of garnishment and fraudulent transfer allegations against Appellant's numerous bank and investment accounts, and the disability payments, ensued. *Id*. Appellant, having gone through a number of lawyers in this lawsuit, requested Denes' assistance to dissolve the writs of garnishment and challenge the fraudulent transfer allegations (the "Garnishment Proceedings"). *Id*. Denes agreed to do so on an hourly fee basis. *Id*. Denes was successful in dissolving several writs of garnishment. *Id*. Despite Denes work in the Garnishment Proceedings, including successfully causing monies to be released from garnishment, Appellant did not pay Denes for its services, leaving Denes with over $13,000 in unpaid hourly attorney's fees. *Id*.

While Denes was still representing Appellant in the Garnishment Proceedings, Appellant began preparing for bankruptcy. (DE 235:3.) Appellant and his first bankruptcy counsel (the first of three separate counsel that eventually withdrew from representing Appellant in the bankruptcy matter) assured Denes that the bankruptcy would not affect the disability funds and Denes' lien on those funds. *Id*. They further assured Denes that neither the bankruptcy trustee nor Appellant's creditors would have any interest in the disability proceeds and Denes' share of those proceeds, which were continuing to be paid monthly from the insurance company into Denes' trust account. *Id*. And, indeed, in his bankruptcy schedule of income, filed with the bankruptcy court, Appellant confirmed to the bankruptcy

8

court and his creditors that he was entitled to only two-thirds (2/3) of the disability payments, not the entire amount. (DE 1:30; TR at p. 9.)  Because the insurance company funded Denes' fees arising out of the disability case directly, at the time of the bankruptcy and throughout the bankruptcy, Appellant owed nothing to Denes with respect to the Fee Agreement. *Id*.

With respect to Denes' hourly fee work in the Garnishment Proceedings, however, Appellant did owe Denes over $13,000.00 (the "Garnishment Fees"). Denes understood that this was the reason it was listed as an unsecured creditor in Appellant's bankruptcy case.[1]  Prior to the filing of his bankruptcy, Appellant had continually promised to pay Denes the Garnishment Fees, but he never did. (DE 235:2.)  Denes never filed a proof of claim in the bankruptcy for the Garnishment Fees because they had been written off as uncollectible. *Id*.

During the bankruptcy proceeding, neither Appellant nor his first bankruptcy attorney (who withdrew as counsel) nor his second bankruptcy attorney (who withdrew as counsel) nor the bankruptcy trustee nor any creditor ever informed Denes that anything was amiss with respect to the collection and distribution of the disability funds as set forth in the Fee Agreement. (DE 233:6; DE 245:6.)  Both Appellant and his second bankruptcy attorney sat quietly as Denes dealt with the insurance company to ensure that payments continued during

---

[1] On his bankruptcy schedule of unsecured creditors, Appellant listed Greg Denes (personally) and not Gregory L. Denes, P.A. (DE 1:22.)

9

the bankruptcy. *Id*.  Appellant gladly accepted this result and never once challenged Denes' lien or property interest in the disability funds deposited into Denes' trust account each month by the insurance company. *Id*.  To this day, Appellant has not challenged any of the attorneys' fees collected prior to or during the bankruptcy, and instead has only challenged Denes' entitlement to fees that were to be paid post-bankruptcy. (DE 233:6.)

      Upon Appellant's discharge from bankruptcy, the ambush occurred. Appellant's bankruptcy counsel sent a letter directly to the disability insurance company instructing the insurance company to discontinue future funding of the disability payments into Denes' trust account. (DE 235:3.)  Denes immediately notified the insurance company and Appellant of his lien and interest in any future benefits to be funded. (DE 241:6-7.)  Denes then promptly made a motion in the Bankruptcy Court for an order determining that Denes' right to its portion of the disability funds was not discharged, and was unaffected by, Appellant's discharge. The Bankruptcy Court granted Denes' motion and this appeal ensued. (DE 245.)

SUMMARY OF THE ARGUMENT

The Bankruptcy Court correctly ruled that Denes' charging lien survived bankruptcy and that, in any event, under the terms of the Fee Agreement, Appellant had no property interest in the (1/3) portion of future disability monies from which Denes' contingency fees would be paid. Denes' inchoate charging lien was perfected as soon as Appellant challenged Denes' entitlement to fees, and the charging lien related back to the date Denes' services commenced and survived bankruptcy.

ARGUMENT

I. JUDGE MARK DID NOT COMMIT REVERSIBLE ERROR BY FINDING THAT DENES' CHARGING LIEN ON UNFUNDED RECOVERIES SURVIVED BANKRUPTCY

Appellant advanced only one argument before Judge Mark and advances only one argument before this Court: namely, that he had no notice of Denes' charging lien on recoveries that would be funded after Appellant's discharge. Nothing could be farther from the truth. Indisputably, for more than three (3) years, Appellant knew that his insurance company was funding payment of disability payments through Denes' trust account. In fact, in the Fee Agreement, Appellant specifically directed that disability funds be deposited into Denes' trust account and assigned 1/3 of those funds to Denes. Appellant clearly understood that future funding would occur in that manner as well. For those same three-plus years,

11

Appellant never disputed, challenged, or made any complaint whatsoever about Denes' lien on, entitlement to, and retention of 1/3 of the disability insurance funds collected each month pursuant to the contingency Fee Agreement a result of Denes' victory against the insurance company.

Judge Mark found that Appellant never challenged the Fee Agreement and never objected to the procedure provided for the payment of Denes' fee at any time throughout the bankruptcy proceeding. (DE 245:6.)  Appellant did not dispute this finding.  In fact, during the bankruptcy proceeding, Appellant was still represented by Denes in the disability insurance matter, there were no disputes, and Appellant never suggested that Denes cease his representation.  To the contrary, throughout the bankruptcy proceeding, Appellant happily accepted Denes' services in submitting claim forms, communicating with the insurance company, and ensuring that benefits were funded.

Importantly, Judge Mark also found that both Appellant and his first bankruptcy counsel assured Denes that the bankruptcy would affect neither the disability payments nor Denes' lien on those payments. (DE 245:4.)  They represented that neither the trustee nor the creditors would have an interest in Denes' fees.  Accordingly, Judge Mark correctly determined that it would be inappropriate and unnecessary for Denes to give "notice" of its charging lien to its own, satisfied client prior to or during the bankruptcy proceeding.  See, *Weed v.*

*Washington* (*In re Washington*), 242 F.3d 1320, 1323 (11th Cir. 2001) (notice of charging lien to be given after "an attempt by the client to avoid paying or a dispute as to the amount of the fee"); *Sinclair, Louis et al. v. Baucom*, 428 So.2d 1383, 1385 (Fla. 1983) (charging lien to be asserted "where there has been an attempt to avoid payment of fees . . . or a dispute as to the amount involved); *Litman v. Fine, Jacobson, Schwartz, Nash, Block and England, P.A.*, 517 So.2d 88, 93 n.6 (Fla. 3rd DCA 1987) (notice of an inchoate charging lien may be critical to a discharged or withdrawing attorney to give notice to a successor attorney and to "remind" the client of his obligations, but cases involving claims other than discharged or withdrawing attorneys fail to exhibit a unified view of the purpose underlying the notice requirement).

After assuring Denes that its contingency fees were protected from bankruptcy, Appellant laid in wait until he received his bankruptcy discharge, at which point his second (now withdrawn) bankruptcy counsel sent a letter to the insurance company demanding that no further contingency fees be paid to Denes. Denes immediately gave notice to both the insurance company and Appellant of its lien on the proceeds of the disability payments. Judge Mark correctly ruled that Denes' equitable charging lien related back to the date Denes commenced services some three years prior to the bankruptcy. *In re Washington,* 242 F.3d at 1323 (charging lien "relates back to the commencement of the services rendered by the

attorney on behalf of the client and takes effect from that time"); See also *Litman*, 517 So.2d at 92 n.4. (the performance of services and a resulting favorable settlement bring the charging lien into existence at common law; there is no time limit *per se* on the assertion of the charging lien). Appellant cites no authority to the contrary.

Finally, without citing any authority, Appellant asserts that Denes' charging lien does not survive bankruptcy because Denes was not a secured creditor and did not give notice to its own silent and satisfied client of its charging lien. The Eleventh Circuit directly refutes Appellant's argument. A charging lien relates back to the date of creation of the attorney-client relationship and establishes the attorney as a secured creditor in bankruptcy. *Grant v. Kaufman*, P.A. (*In re Hagen*) 922 F.2d 742, 745 (11th Cir. 1991). Importantly, "a charging lien survives bankruptcy if the fund to which it would attach has not come into existence prior to or in the course of the bankruptcy proceeding." *Id.* at fn. 4. On this point, Judge Mark made a factual finding that no debt from Appellant to Denes was due and owing during or prior to the bankruptcy, as the future payments had not yet been funded. (DE 245:7.) And, in fact, Appellant has not claimed that any of the payments made to Denes up until Appellant's discharge are due to Appellant. Instead, he claims only that future funding, which had not yet come into existence at the time of discharge and would be determined in the future by the insurance

14

company, should be subject to discharge.[2]  *Hagen* is directly on point that Denes' charging lien survives bankruptcy, and Judge Mark correctly followed the law.

Judge Mark also correctly recognized that Denes' contingency fees could not be allowed as a general unsecured claim because, on the petition date, there was no debt and because any claim for future unpaid disability would be difficult to determine. (DE 245:7)  The future funding of such fees would be totally dependent on Appellant remaining disabled and the insurance company continuing to accept the disability claim.  Because Denes' rights under the Fee Agreement are enforceable only against 1/3 of those exempt future payments, Denes could not share as an unsecured creditor in the proceeds recovered by the trustee for payment of prepetition debts.  *Id.*  Accordingly, no proof of claim for the post-discharge disability payments was necessary or appropriate.  Again, Appellant has cited no authority to the contrary.

> II. APPELLANT HAS NOT CHALLENGED THE COURT'S RULING THAT APPELLANT HAS NO OWNERSHIP OR INTEREST IN DENES' FEE

Appellant has failed to address the bankruptcy court's ruling concerning Denes' property interest in 1/3 of the future funds payable to Denes pursuant to the

---

[2] Indeed, future payments are not guaranteed.  They are subject to a determination by the insurance company that Mr. Deutsch remains disabled.  Each month, the insurance company is entitled to request claim forms and physician's records to make such a determination.  If they are not provided to the insurance company, the benefits will not be paid.  The P.A. was assisting Mr. Deutsch with this task before he attempted to avoid paying the contingency fees.

15

Fee Agreement. Specifically, Judge Mark held that, under the Fee Agreement, Appellant has no ownership or beneficial interest in Denes' 1/3 of future insurance funds. This is because, under the Fee Agreement, Appellant assigned 1/3 of the proceeds of future funding to Denes and agreed that this 1/3 interest would be paid directly from the insurance company to Denes.

Judge Mark's ruling - - which is not challenged at all by Appellant in this appeal - - is borne out by the record. For example, Appellant acknowledged Denes' property interest (and the lack of his property interest) in Denes' future fees when Appellant, in his bankruptcy schedule of income, listed only 2/3 of the disability benefits as his income. Having no property interest in these future attorneys' fees, such fees could not be considered part of the Appellant's assets at all. On this separate and independent basis alone, Judge Mark's decision should be affirmed.

## CONCLUSION

The Bankruptcy Court correctly ruled that Denes' charging lien and property interest in contingency fees which were not to be funded prior to or during the bankruptcy proceedings survived, and were not discharged in, Appellant's bankruptcy. This Court should affirm the Bankruptcy Court's Order.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the page and type-volume limitations set forth by Fed. R. Bankr. P. 8014 and 8015, and this Court's Local Rule 87.4. This brief contains 2,930 words, as counted by Microsoft Word, in double-spaced 14-point Times New Roman font.

/s/ *Robert Fracasso*
Of Counsel

<u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all parties listed below via ECF on this 18th day of November 2015.

<u>/s/ *Robert Fracasso*</u>
Of Counsel

Scott Deutsch, *pro se*
5777 Pine Tree Drive
Miami Beach, FL  33140
scotthdeutsch@yahoo.com

MIADOCS 11885810 4