IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cv-22578-KMM

SCOTT HARRY DEUTSCH,

    Appellant,

vs.

GREGORY L. DENES, P.A.,

    Appellee.
_____/

## ORDER

THIS CAUSE is before the Court on appeal from the Bankruptcy Court's June 25, 2015, Order Granting Motion To Determine That Debtor's Discharge Does Not Affect Lien On Future Disability Payments. *See In re Scott Deutsch*, No. 14-17004-RAM (Bankr. S.D. Fla. June 25, 2015), (Bankr. ECF No. 245).[1]  Before the Court are Appellant Scott Harry Deutsch's Brief (ECF No. 16); and Appellee Gregory L. Denes, P.A.'s Brief in Opposition to Appellant's Brief (ECF No. 17).  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

For the reasons stated herein, the Bankruptcy Court's June 25, 2015 Order is AFFIRMED.

**I.    BACKGROUND**

This case arises out of services performed by Appellee Gregory L. Denes, an attorney, on behalf of Appellant Scott Harry Deutsch, relating to disability benefits Northwestern Mutual Life Insurance Company ("Northwestern Mutual") owed to Deutsch.  In 2011, Deutsch retained Denes to represent Deutsch in his disability benefits claim against Northwestern Mutual.  *See*

---

[1] The designation "Bankr. ECF" refers to the docket in the bankruptcy case.

Decl. of Gregory L. Denes (Bankr. ECF No. 235).  Deutsch and Denes entered into a standard contingency fee agreement (the "Agreement") whereby Deutsch agreed to compensate Denes at a rate of one-third of the disability benefits recovered.  *See* Contingency Fee Agreement (Bankr. ECF No. 233-1).  The Agreement also stated that all disability benefits would be paid directly into Denes' trust account and disbursed on a monthly basis.  *Id*.

In October 2011, Denes prevailed in securing Deutsch's disability benefits from Northwestern Mutual.  *See* Decl. of Gregory L. Denes (Bankr. ECF No. 235).  From November 2011 forward, Northwestern Mutual sent monthly payments to Denes' trust account.  *See* Order Granting Mot. to Determine that Debtor's Discharge Does Not Affect Lien on Future Disability Payments at 3 (Bankr. ECF No. 245).  Two-thirds of those funds were then distributed to Deutsch, with Denes keeping one-third, as set forth in the Agreement.  *Id.*  Denes remained the point of contact for Northwestern Mutual on Deutsch's claim.  Decl. of Gregory L. Denes (Bankr. ECF No. 235).  As such, Denes prepared and submitted claim forms and provided other assistance to ensure that Deutsch continued to receive his disability benefits.  *Id.*

Separately, Denes successfully assisted Deutsch in garnishment proceedings arising from a multi-million dollar judgment against Deutsch.  *Id.*  Denes billed hourly for this work.  *Id.*  At the conclusion of his representation, Denes billed Deutsch $13,000 in attorney's fees, of which $12,000 remains unpaid.  *Id.*

On March 27, 2014, Deutsch filed a chapter 7 voluntary petition.  *See* Chapter 7 Voluntary Petition (Bankr. ECF No. 1).  Deutsch listed Denes as a general unsecured creditor.  *Id.* at 22.  Denes met with Deutsch and his bankruptcy counsel who assured Denes that his one-third fee for the disability benefits would not be affected by the bankruptcy.  *Id.*  Denes did not file a proof of claim.  *Id.*

On January 15, 2015, Deutsch was discharged in bankruptcy. *See* Order Granting Mot. to Determine that Debtor's Discharge Does Not Affect Lien on Future Disability Payments at 4 (Bankr. ECF No. 245). On February 17, 2015, Denes received a letter from Deutsch's bankruptcy counsel, which asked Denes to "discontinue paying [his] pre petition debt from [Deutsch's] post petition revenue." Mot. to Determine that Debtor's Discharge Does Not Affect Lien on Future Disability Payments (Bankr. ECF No. 233-2). Deutsch's counsel also included a copy of the letter she sent to Northwestern Mutual which stated that future payments should be disbursed directly to Deutsch, not Denes, as "the obligation to [Denes] was discharged in [Deutsch's] bankruptcy case." *Id.* On March 2, 2015, Denes sent a letter to Northwestern Mutual asserting his dispute with Deutsch's position, as well as his continued interest in the future disability payments. Gregory L. Denes Notice of Filing (Bankr. ECF No. 240). Shortly thereafter, on May 1, 2015, Denes moved in Bankruptcy Court for an order determining that his right to one-third of the disability funds was unaffected by Denes' bankruptcy. *See* Mot. to Determine that Debtor's Discharge Does Not Affect Lien on Future Disability Payments (Bankr. ECF No 233).

On May 21, 2015, the Bankruptcy Court conducted a hearing on Denes' Motion. *See* Bankr. Tr. of Hearing Held on 05/21/2015 (ECF No. 6). At the hearing, the Bankruptcy Court made a preliminary ruling in favor of Denes. *Id.* at 18. The Bankruptcy Court expressed some doubt that Deutsch had any property in the one-third fee at all, but stated that, to the extent that the one-third contingency fee was a lien interest, the lien was created and perfected by the contingency fee agreement and thus passed through bankruptcy. *Id.*

On June 25, 2015, the Bankruptcy Court entered an Order granting the Motion to Determine that Debtor's Discharge Does Not Affect Lien On Future Disability Payments. The

Bankruptcy Court found: (1) Denes did not need to assert a charging lien in order to enforce the Agreement until Deutsch objected to the fee at the conclusion of his bankruptcy case; (2) once Deutsch objected to the fee Denes timely asserted his charging lien on future payments; and (3) under the Agreement, Denes has a valid and enforceable lien on one-third of all future payments. *See* Order Granting Mot. to Determine that Debtor's Discharge Does Not Affect Lien on Future Disability Payments (ECF No. 16).

Deutsch now appeals from the Bankruptcy Court's Order.

## II. DISCUSSION

The sole issue on appeal is whether the Bankruptcy Court correctly ruled that Denes created and perfected a charging lien that remained unaffected by Deutsch's discharge in bankruptcy. For the reasons explained below, the Court affirms.

### A. Standard of Review

On appeal, the Court reviews a bankruptcy court's legal rulings de novo and its findings of fact for clear error. *See, e.g.*, *In re Rosenberg*, 779 F.3d 1244, 1264 (11th Cir. 2015); *In re Sublett*, 895 F.2d 1381, 1383–84 (11th Cir. 1990); *see also* Fed. R. Bankr. P. 8013. Mixed questions of law and fact are reviewed de novo. *In re Lentek Int'l, Inc.*, 346 F. App'x 430, 433 (11th Cir. 2009). "Under *de novo* review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *In re Brown*, No. 6:08-cv-1517-Orl-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing *In re Piper Aircraft Corp.,* 244 F.3d 1289, 1295 (11th Cir. 2001)). On the other hand, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

4

B. Analysis

Deutsch argues that the Court should reverse because Denes failed to create or perfect a charging lien, and the contingency fee constituted a debt that was discharged in bankruptcy. In response, Denes argues that his charging lien was perfected as soon as Deutsch challenged Denes' entitlement to fees, and the charging lien relates back to the date Denes' services commenced. The Court agrees with Denes, and the reasoning of the Bankruptcy Court.

State law governs the issue of whether a lien has been created in the context of a bankruptcy proceeding. *In re Washington*, 242 F.3d 1320, 1322 (11th Cir. 2001) (citing *In re Hagen*, 922 F.2d 742, 744 n.2 (11th Cir. 1991)). Under Florida law, attorneys may secure the right to collect contingency fees through the equitable mechanism of an attorney's charging lien. *See id* at 1323. To impose a charging lien, a court must find: (1) an express or implied contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien. *See id* (citation omitted).

An attorney's charging lien attaches to a judgment for the client, but will relate back to, and take effect from, the commencement of the services rendered by the attorney on behalf of the client. *Id.* (citing *Miles v. Katz*, 405 So. 2d 750, 752 (Fla. 4th DCA 1981)). "In effect, the interest created by a valid attorney's charging lien arises by operation of law when all the requirements of such a lien are satisfied and is effective from the commencement of the attorney's services in advance of any judicial action recognizing it." *Id.* A valid attorney's charging lien will survive bankruptcy "if the fund to which it would attach has not come into

5

existence prior to or in the course of the bankruptcy proceeding." *In re Hagan*, 922 F.2d at n.4 (citations omitted).

Denes has a valid attorney's charging lien on his share of Deutsch's disability payments. Though Denes and Deutsch had an express contingency fee agreement, Denes did not need to provide notice of the charging lien until Deutsch disputed the charge. Prior to Deutsch's discharge in bankruptcy, Deutsch neither disputed nor challenged Denes' one-third fee. Indeed, Deutsch continued to benefit from the services that Denes provided, as evidenced by his continued receipt of the disability payments.

Importantly, the Bankruptcy Court also found that Deutsch and his bankruptcy counsel assured Denes that Deutsch's discharge in bankruptcy would not affect Denes' one-third fee on the disability payments. Deutsch does not attempt to argue that this finding was clearly erroneous. Thus even after Deutsch filed for bankruptcy, he insisted that there was no dispute with respect to the disability payments. This fact belies Deutsch's contention that Denes was put on "constructive notice" that there was a dispute at the time that Deutsch filed his petition and listed Denes as an unsecured creditor. *See* Principal Brief of Appellant Scott Harry Deutsch at 18 (ECF No. 16). Further, as the Bankruptcy Court found, Denes' entitlement to the one-third share of the disability payments was not the general unsecured claim Deutsch listed in his petition. Rather, as Denes understood it, the unsecured claim was the $12,000 fee Deutsch owed Denes for his work in the garnishment proceedings. Deutsch does not contest this, and the Court finds that the bankruptcy petition itself did not constitute a dispute as to Denes' claim on the disability payments.

The dispute, therefore, did not arise until Deutsch's bankruptcy counsel contacted Northwestern Mutual in February 2015 to remove Denes from future disability payments. Upon

receipt of the letter, Denes immediately notified Northwestern Mutual of the charging lien, which put Deutsch on notice of the lien. At that point, all of the requirements of an attorney's charging lien were satisfied, and a lien was perfected which related back to the commencement of Denes' services. The charging lien survived bankruptcy because, as the Bankruptcy Court found, no debt was due and owing prior to the bankruptcy, as the future disability payments had not yet been funded. Accordingly, the Bankruptcy Court correctly found that Deutsch's discharge does not affect Denes' lien on future disability payments.

### III.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court's June 25, 2015, Order Granting Motion To Determine That Debtor's Discharge Does Not Affect Lien On Future Disability Payments (Bankr. ECF No. 245), is AFFIRMED.

It is further ORDERED AND ADJUDGED that the Clerk of Court shall CLOSE this case. All pending motions not otherwise ruled upon are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of March, 2016.

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

c:    All counsel of record